UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA                    CASE NO.:   11CR102(LAK)

        Plaintiff,

vs.

VIKRAM DATTA,

        Defendant.

_____/

**INITIAL SENTENCING MEMORANDUM ON BEHALF OF VIKRAM DATTA**

Defendant, Vikram Datta, asks the Court to consider the following memorandum in determining a sentence that is "sufficient but not greater than necessary" in this case.

## I. INTRODUCTION

Vikram Datta will be brought before the court for sentencing on January 20, 2012. Undoubtedly, the sentencing guidelines which will likely be determined to apply to this case will be a factor which will suggest a prison sentence which counsel urges will be disproportionate to the actual conduct of Mr. Datta giving rise to his convictions in this case.  This sentencing memorandum has been prepared to assist the Court in fashioning a sentence which more accurately reflects the conduct for which Mr. Datta was found guilty and reflects the positive characteristics and history of Mr. Datta, all of which strongly suggest a sentence substantially less than that suggested by the guidelines. This memorandum explains why the sentencing guidelines alone do not produce a "reasonable" sentence in this unusual case.

## II. SENTENCING AFTER *BOOKER*

**"Apply the guidelines unless there's something extraordinary"**
**is what *Booker* struck down and is unsupported by §3553(a)**

ROBBINS, TUNKEY, ROSS, AMSEL, RABEN & WAXMAN
LAWYER'S PLAZA, 2250 SW 3 AVE., 4TH FLOOR, MIAMI, FLORIDA 33129
TOLL FREE: 800-226-9550  |  DADE: 305-858-9550  |  BROWARD: 954-522-6244  |  FAX: 305-858-7491
WWW.CRIMLAWFIRM.COM

After *Booker* 543 US 220 (2005), the Court must impose a sentence that is "sufficient but not greater than necessary" considering seven factors listed in 18 USC §3553(a), namely:

1.  The nature of the offense and the history and characteristics of the defendant;
2.  The purpose of sentencing (retribution, specific deterrence, general deterrence and rehabilitation);
3.  The kinds of sentences available (i.e., alternatives to prison);
4-5.  The sentencing guidelines and their policy statements, which are advisory;
6.  Avoiding disparity in treatment of similar offenders;
7.  The need to provide restitution

Neither *Booker* nor §3553(a) give "special weight" to any single factor. The sentencing guidelines in particular should have no such weight, for at least three important reasons:

First, the plain language of §3553(a) does not support a preference of one factor over the others.

Second, the sentencing guidelines have always contained exceptions for unusual cases and specific reasons and thus were never strictly "mandatory" - but they still were held unconstitutional in *Booker*, even with their built in flexibility.

Third, the guidelines restrict or forbid consideration of factors that now <u>must</u> be considered independently.

Giving any one factor *a priori* precedence over the others is inconsistent with §3553(a) and *Booker*. Here each of the seven sentencing factors call for a **significant** reduction from the sentence suggested by the guidelines. Any approach to sentencing which automatically gives heavy weight to the guideline range comes perilously close to the mandatory regime found to be constitutionally infirm in *Booker*. <u>United States v. Jaber</u>, 362 F. Supp 2d 365 (D. Mass 2005).

Shortly after *Booker* was decided, Judge Adelman observed in <u>United States v. Ranum</u>, 353 F. Supp 2d 984,987 (E.D. Wisc. 2005):

> "Sentencing will be harder now then it was just a few months ago. District Courts cannot just add up figures and pick a number within a narrow range. Rather, they must

-2-

ROBBINS, TUNKEY, ROSS, AMSEL, RABEN & WAXMAN
LAWYER'S PLAZA, 2250 SW 3 AVE., 4TH FLOOR, MIAMI, FLORIDA 33129
TOLL FREE: 800-226-9550  |  DADE: 305-858-9550  |  BROWARD: 954-522-6244  |  FAX: 305-858-7491
WWW.CRIMLAWFIRM.COM

consider all of the applicable factors, listen carefully to
defense and government counsel, and sentence the person
before them as an individual. *Booker* is not an invitation to
do business as usual"

## III. NATURE OF THE OFFENSE AND HISTORY AND CHARACTERISTICS OF THE DEFENDANT

### a. HISTORY AND CHARACTERISTICS OF DEFENDANT

After *Booker*, there is no limitation on the information concerning the background, character and conduct of the defendant which a court may receive and consider for the purpose of imposing an appropriate sentence. Thus, the Court now should consider the Defendant's history and character outside of this offense.

### THE HISTORY AND CHARACTERISTICS OF MR. DATTA

The history and characteristics of Mr. Datta are discussed in heartfelt detail in his own letter to the Court annexed as *Exhibit A-1*. Below is counsels' synthesis of the major aspects of his history and characteristics.

Vikram Datta's only prior contact with the criminal justice system was a DUI many years ago. Accordingly, other than this case, Vikram Datta has led a law abiding life for 51 years.

Mr. Datta's history is that of a very hardworking devoted family man who has made great sacrifices in his life to support his family, particularly his two daughters for whom he has been an extraordinary parent. After many years of employment at many different kinds of jobs, often multiple jobs at a time, Mr. Datta found himself in the perfume business in New York. His wife, Michelle, also contributed to the support of the family working in the banking industry. Between the two, the Dattas lived a modest life raising their two young daughters. In 2000 Mr. Datta traveled, for the first time, to Laredo, Texas with the hope of collecting an overdue debt owed by one of the perfume dealers in Laredo to whom Mr. Datta had sold perfume. What he discovered in Laredo was opportunity.

Laredo is the largest point of entry for commerce between the United States and Mexico. Behind only New York, Los Angeles and Miami, Laredo is the largest perfume market in the

ROBBINS, TUNKEY, ROSS, AMSEL, RABEN & WAXMAN
LAWYER'S PLAZA, 2250 SW 3 AVE., 4TH FLOOR, MIAMI, FLORIDA 33129
TOLL FREE: 800-226-9550 | DADE: 305-858-9550 | BROWARD: 954-522-6244 | FAX: 305-858-7491
WWW.CRIMLAWFIRM.COM

United States. Mr. Datta was awed by the lines of individuals crossing the US-Mexico border to shop in Laredo. In what took only a day to decide, Mr. Datta made a decision which would alter his life and the future of his family. Mr. Datta rented what had been a Perfumania store in downtown Laredo, adjacent to the bridge which brought thousands of shoppers and potential customers to his first retail store.

Making a move to Laredo, Texas was not without its sacrifices. Mr. Datta left his wife and daughters in New York with the dream of providing them a better life. This wasn't an easy thing for a man who loves his family and cherishes his daughters. For the next ten years Vikram Datta worked tirelessly growing his business, eventually opening a second and third retail store in Laredo. Mr. Datta regularly traveled between New York and Laredo to visit with his family and to be the great father of his two growing daughters which he continues to be. This is the kind of personal sacrifice that is seldom seen and one that speaks loudly about Mr. Datta's character.

Mr. Datta has undoubtedly established himself as an honest businessman. Over the years in which Mr. Datta grew his perfume business, he never once failed to pay his debts. Wholesalers were selling Mr. Datta millions of dollars of perfume on credit and, no matter how difficult it may have been at times, Mr. Datta paid his bills in full. Mr. Datta's reputation in the perfume industry is that of an honest and trustworthy man, a reputation that is well deserved.

Mr. Datta's work benefitted not only his family, it benefitted many other families in Laredo and, ultimately, in several other US cities adjacent to the Mexican border in which he opened additional retail stores. Vikram Datta changed the lives of dozens of families as he provided jobs with stability and growth. Along the way, Mr. Datta's support of his many employees included his financial assistance to his employees' families. Vikram Datta gave money to employees to purchase homes; gave money to employees to advance their educations and gave money to employees when faced with medical issues which they could not afford to address. It is not surprising that most of his employees have worked for him for years. When arrested in this case, Mr. Datta's paramount concern was not for himself but for the future of his many employees whose lives and families relied on their jobs.

Mr. Datta's willingness to help others extended well beyond his employees. Vikram Datta is well regarded in his community as a charitable and involved businessman. It was not

-4-

uncommon for Mr. Datta to donate his time and his money to charitable causes including an orphanage, a mental health facility and numerous causes for the betterment of the lives of others. He did this selflessly and consistently. His willingness to help others speaks volumes about who Mr. Datta really is.

Despite Mr. Datta's own conclusion that he was motivated to continue talks with the undercover agent by greed, Mr. Datta is a selfless and unselfish person who has changed the lives of many for the good of others.

The Court now **must** consider these facts. They have as much weight as any other factor including the advisory sentencing guidelines and compel leniency in sentencing Mr. Datta.

## MR. DATTA'S REPUTATION AND CHARACTER IN THE COMMUNITY

We submit over 100 letters of character reference from family, friends and business associates depicting Vikram Datta as a valued asset to the community. These letters express the communities high assessment of his loyalty, his trustworthiness, his dependability and reliability in all aspects of his life. He has been a devoted husband and father. He has gained the respect of his contemporaries in business.

Mr. Datta's character and his decades of good works - and the support from his friends and family-are manifest. Submitted herewith to the Court are letters from individuals from all walks of life which attest to Vikram Datta's honesty, trustworthiness, integrity and generosity. These letters-from family and friends; from present and former employees; from vendors and customers and from members of the Laredo business community, who have all benefitted from Vikram Datta's positive traits, are uniform in their praise.

People in the business community.

Mr. Datta has received praise and support from many in his business community not only for his honest work ethic, but also for his charitable and kind ways.

> "Vikram was a professional and trustworthy individual that
> was opening up new stores and providing job opportunities
> within multiple markets." *Mark C. Scott Ex. B-4.*

> "I've seen him grow each of his businesses, and I've seen
> him struggle working until late at night coming and going

-5-

between his family and work, always trying to open new jobs" *Gumersindo Alvarez* **Ex. B-5**.

"For years I have seen Mr. Datta as a very hard working person growing and expanding his business by working seven days a week and twelve to fourteen hour days." *Fidel Gilberto Munoz* **Ex. B-3**.

"I came to know Mr. Datta as an extremely polite, caring and generous individual..." *Les Norton* **Ex. B-2**.

"Mr. Datta had a good reputation in Laredo.  He was charitable, liked and respected" *Louis Lidsky* **Ex. B-9**.

## Vendors and Customers of Vikram Datta

Mr. Datta purchases perfume for his stores from vendors in different parts of the country, including New York/New Jersey.  His customers, for the most part are in Mexico.  Here is what some of them had to say about Vikram Datta.

"In all the years of my dealings with Vikram, I have found him to be one of the rare members of our perfume business that was honest with me both personally and in business" *Vicken Arslanian* **Ex. C-1**.

"Vikram's behavior within the business climate was stellar" *Max Benoliel* **Ex. C-2**.

"I knew him to be a man of honor, who kept his word." *Ester Hacken* **Ex. C-5**.

"As I know Mr. Vikram is a very loyal and very helping nature person." *Dalip Menghani* **Ex. C-10.**

"I have viewed him as a man of high character and a man to help others." *Brian Oberlender* **Ex.C-11.**

## Employees and Former Employees

-6-

ROBBINS, TUNKEY, ROSS, AMSEL, RABEN & WAXMAN
LAWYER'S PLAZA, 2250 SW 3 AVE., 4TH FLOOR, MIAMI, FLORIDA 33129
TOLL FREE: 800-226-9550  |  DADE: 305-858-9550  |  BROWARD: 954-522-6244  |  FAX: 305-858-7491
WWW.CRIMLAWFIRM.COM

The letters of support speak to Vikram Datta's "almost-family" relationship with the many people who have been employed as a result of Mr. Datta's hard and honest work. More than forty present and former employees have written to the Court.

> "Mr. Datta's character is a caring and loving person. He is always concern for the welfare of his employees..." "I am a single mother and Mr. Datta always look out for the welfare of my children. My son who is 19 years old has autism... Mr. Datta took my son out for lunch and talked to him and encouraged him to go back to school." *Norma E. Aguilar* **Ex. D-2**.

> "Mr. Datta has always treated us his employees with respect and is a great boss that cares for his employees." *Julio Flores* **Ex. D-3**.

> "He has always been there for us, supporting us in any problems; it could be work or personal trouble, always worried for the welfare of his employees." *Claudia Roxana Alcaraz* **Ex. D-5**.

> "Mr. Datta is a compassionate and hardworking human being with perseverance and ambition." *Flora K. Alegria* **Ex. D-6**.

> "He treats us as family and is concerned about our problems with our family too." *Janet Burgueño* **Ex. D-11**.

> "I can personally say he was the best boss. He was responsible, compassionate and always mindful of others. He made us feel like we were part of his family." *Mirtha Gonzalez* **Ex. D-23**.

> "He is a one of a kind boss." *San Juana Hernandez* **Ex. D-26**.

> "Mr. Vikram has spoken to me about always believing in myself, which has made me a better person, in the time I have known him, he has given many people the same type of inspiration" *Claudia C. Lopez* **Ex. D-30**.

ROBBINS, TUNKEY, ROSS, AMSEL, RABEN & WAXMAN
LAWYER'S PLAZA, 2250 SW 3 AVE., 4TH FLOOR, MIAMI, FLORIDA 33129
TOLL FREE: 800-226-9550  |  DADE: 305-858-9550  |  BROWARD: 954-522-6244  |  FAX: 305-858-7491
WWW.CRIMLAWFIRM.COM

"I've been working in this job for seven years. These are the years I've known Vikram. He is a very nice person. He is a family man." *Vernaldino Romero* **Ex. D-38.**

"I have many good things to say about Mr. Datta who was always concerned with the well being of his employees." *Olga A. Suarez* **Ex. D-42.**

Friends

Some of the friends who wrote to the Court have known Vikram since coming to the United States in 1983 and others grew up with him in India even before that.

"I have known Vikram Datta for almost 20 years we have remained good friends ever since. I know Vikram to be a very honest and caring person." *Dalip Malhotra* **Ex. E-8**.

"It is really unbelievable that a person of this nature can do anything legally wrong." *Dr. Sonia Malik* **Ex. E-9**.

"Vikram is one of the kindest individuals that I have ever met. He is a warm, gentle, caring person with an incredible heart." *Yogy Mehta* **Ex. E-10.**

"Vikram Datta has always been an active and a helpful member of the community." *Arvind Parasher* **Ex. E-11.**

Charitable and Good Deeds

So many of the letters written to the Court share similar themes when speaking of Vikram Datta; Charitable, generous and a kind and good person. His actions speak louder than their words:

Vikram Datta donated school bags and sweaters to an orphanage for 70 children. *Bal Gram Rai* **Ex. F-12**. He has donated kitchen utensils, beds, pillows and sheets to another Orphan House. **Ex. F-**

ROBBINS, TUNKEY, ROSS, AMSEL, RABEN & WAXMAN
LAWYER'S PLAZA, 2250 SW 3 AVE., 4TH FLOOR, MIAMI, FLORIDA 33129
TOLL FREE: 800-226-9550 | DADE: 305-858-9550 | BROWARD: 954-522-6244 | FAX: 305-858-7491
WWW.CRIMLAWFIRM.COM

*13*.  He makes an annual donation to a facility for the blind. *Ex. F-9; F-10; F-11*.

"He has been doing so much charity in India." *Sudesh Kumar Datta Ex. F-4*.  Mr. Datta Contributes to community service organizations in locations of his various stores. *Jokin Esquer Ex. F-5*.  He has donated to the Rotary Club in India to assist in setting up a dialysis center. *Rtn. Tara Chand Gandhi Ex. F-6*.  Catholic Charities has been the beneficiency of Mr. Datta's generosity. *Cristine Lopez Ex.F-2*.

"A few years later I found out that it had been Mr. Datta who anonymously paid for my tuition.  I don't think there was ever a time in my life where I felt so grateful and appreciative of another person.  Mr. Datta's selfless act literally drove me to tears when I found out." *Christy Azcona Ex. G-1*.

"I and my family will always remain indebted to Vikram uncle for his support in our hours of extreme need." *Rashi Arora Ex. G-2*.

Family

Vikram Datta's family in the United States and those who continue to reside in India have written to the Court all carrying the same message: Vikram Datta is a dedicated family man, devoted husband and loving father who helps others in need and seeks to make the world a better place through his hard work and benevolence.

"Vikram has the heart of gold filled with kindness and sympathy for each and everyone. *Neena Arora Ex. H-4*.

"He has always been a God fearing, honest and hard working person. *Sangeeta Bali Ex. H-5*.

"I find him a very sensible, religious, caring, sympathetic and down to earth person.  I have always observed that he is ever eager to help the needy. *Sangeev Bali Ex. H-6*.

"My brother in law is a man of character." *Margarita Carre Ex. H-9*.

-9-

"For him, work was worship." *Jatinder Datta* **Ex. H-11**.

"Sir, Vikram is a very kindhearted, caring and honest person. He has very sympathetic view for all the needy persons both in the family and outside the family circle." *Ravi Datta* **Ex. H-14**.

"He is a very sincere brother, obedient son loyal and faithful husband and very caring father. He has utmost belief in God and belief in the benevolence of humanity." *Sunil Datta* **Ex. H-16**.

"He left his family back in New York to give better education to his daughters and moved to Laredo all alone and lived a family separated life for 10/12 years." *Vishna Mitter Datta* **Ex. H-18**.

"For all those years knowing my son in law, I can affirm that Vikram is a man of integrity very sympathetic to the suffering of others. He is always asking to help." *Euclid Pierre Louis* **Ex. H-24**.

"I believe my brother in law is a diligent man who works hard with dignity to provide for his family." *Maurice Pierre Louis* **Ex. H-25**.

"I have been devastated by this conviction. This is the man I have known and loved for over 25 years, he is not violent and he always abides by the law." *Michelle Datta* **Ex. H-1**.

"All my life my father worked very hard to provide a better life for my mom, sister and I." *Sangeeta Datta* **Ex. H-2**.

While the above are only a few of the letters among many more, the common thread of all of the letters is that Vikram Datta is indeed an honest, dependable, charitable and ethical man who is an asset to the community. It is remarkable to all who know Mr. Datta that he would ever knowingly violate the law.

## b. NATURE OF THE OFFENSE

We do not here challenge Defendant's conviction, the seriousness of the charges nor his role in the offense. But we do seek to place him in perspective for sentencing.

-10-

Mr. Datta was a legitimate business man selling fragrances in his retail stores and selling, mostly on credit, to legitimate wholesale customers in Mexico. To pay their outstanding bills, the legitimate wholesale customers in Mexico bought US dollars through a casa de cambio who in turn paid in US dollars at La Versailles. Neither they nor Mr. Datta were ever advised that the casa de cambio had decided to purchase what are apparently narco dollars to complete what would otherwise have been a completely legitimate commercial transaction in no way different from the transactions they had engaged in for years.

## THE MONEY LAUNDERING CRIMES WHICH MR. DATTA WAS CONVICTED OF ARE ATYPICAL

No one has suggested nor could it be suggested that Mr. Datta did business with any drug dealers. Clearly, he did not. Just as he had for years since his arriving in Laredo, Mr. Datta sold perfume to the same customers who were genuine wholesalers and retailers in Mexico. For all of those years, cash retail sales continued as the lines of shoppers crossing the border continued. His wholesale customers continued to pay by wire transfer, cash and payment by legitimate casa de cambios. A change in Mexican banking laws in 2009 saw more cash and fewer wire transfers. There was nothing but speculation to suggest that the dollars used to pay invoices at La Versailles fragrances was drug money.

Unbeknownst to Vikram Datta, one of the casa de cambios from whom La Versailles as well as other Laredo perfume merchants received payments from customers had decided in 2009 to purchase deeply discounted dollars under circumstances suggesting that these were narco dollars. No one told Mr. Datta. Mr. Datta charged no more for his goods than he always had. Mr. Datta did not increase his sales beyond that which he had legitimately grown over the many years he was in business. What Mr. Datta did do was to sell completely genuine perfume to completely genuine perfume wholesalers and retailers in Mexico. What Mr. Datta did was to keep accurate records of every transaction believing that the declaration of cash by a CMIR at the border was sufficient to assure that the money he was receiving at La Versailles was without any problems. Mr. Datta was mistaken.

ROBBINS, TUNKEY, ROSS, AMSEL, RABEN & WAXMAN
LAWYER'S PLAZA, 2250 SW 3 AVE., 4TH FLOOR, MIAMI, FLORIDA 33129
TOLL FREE: 800-226-9550  |  DADE: 305-858-9550  |  BROWARD: 954-522-6244  |  FAX: 305-858-7491
WWW.CRIMLAWFIRM.COM

The money laundering crime for which Vikram Datta has been convicted is clearly outside the heartland of such crimes. At worst, he was a passive participant who allowed others to exploit his business for their unlawful purposes.

## THE FAILURE TO FILE COMPLETE 8300'S WAS AN INNOCENT MISTAKE

As the Court learned during the trial of Mr. Datta's case, Mr. Datta deposited all of the cash his business received in his bank which filed required currency transaction reports. Despite his best efforts to comply with all record keeping requirements and filings, it was brought to Mr. Datta's attention that form 8300's had to be filed in addition to the forms La Versailles was filing with the sales tax division of the State of Texas. Mr. Datta consulted his accountant who then put in to place a system for the full time bookkeeper to follow in filing the 8300 forms. Unfortunately, and in error, the bookkeeper prepared 8300 forms for Mr. Datta's signature which, while accurately reporting which customer was paying, omitted the identity of the person or entity conducting the transaction which otherwise was contained in the extensive and accurate handwritten records of La Versailles. The forms filed were incomplete. Plainly stated, this was an innocent mistake.

## MR. DATTA'S UNWILLINGNESS TO LAUNDER MONEY FOR THE UNDERCOVER AGENT

Counsel does not suggest that the Court revisit Mr. Datta's unsuccessful entrapment defense. As opposed to the government's position that Mr. Datta was simply unwilling to get caught overtly transferring funds for a questionable source, it is suggested that Mr. Datta was equivocal because he always sought to run his business legitimately. Despite talking with the undercover agent about proposals to receive tainted proceeds in Panama, Belize, Hong Kong and elsewhere, Mr. Datta steadfastly refused to receive or transfer funds that he was given good reason to believe would be money laundering. Mr. Datta yielded to temptation in making the $38,000 sale, but then thought better of it. These are the circumstances of the offense.

ROBBINS, TUNKEY, ROSS, AMSEL, RABEN & WAXMAN
LAWYER'S PLAZA, 2250 SW 3 AVE., 4TH FLOOR, MIAMI, FLORIDA 33129
TOLL FREE: 800-226-9550 | DADE: 305-858-9550 | BROWARD: 954-522-6244 | FAX: 305-858-7491
WWW.CRIMLAWFIRM.COM

## IV. FACTOR TWO: THE PURPOSES OF SENTENCING (RETRIBUTION; GENERAL DETERRENCE; SPECIFIC DETERRENCE; AND REHABILITATION) (REVIEWED IN REVERSE ORDER)

### a. REHABILITATION

Even if Vikram Datta needed rehabilitation "imprisonment is not an appropriate means of promoting [it]." 18 USC §3582(a). In any event, Vikram Datta has been an outstanding inmate for the full year that he has already been incarcerated. A lengthy prison sentence is plainly not necessary to rehabilitate.

### b. SPECIFIC DETERRENCE

Similarly, imprisonment is hardly needed to protect society from Vikram Datta reoffending. Here is a generally law abiding citizen who, after this case, will have no inclination to break the law. As noted in the presentence investigation report, Mr. Datta's business has suffered tremendously and the government has seized and seeks to forfeit all of his inventory of perfumes (in the millions of dollars) and funds from all of his business and personal accounts. There clearly is no need for a lengthy prison sentence to provide specific deterrence to a man who has already been punished so substantially.

Mr. Datta is 51 years old. In the United States' Sentencing commission 2004 report, the commission observed: "That recidivism rates decline relatively consistently as age increases. Generally the younger offender, the more likely the offender recidivates. Among all offenders under the age of 21, the recidivism rate is 35.5% while offenders over the age of 50 have a recidivism rate of 9.5%." *United States Sentencing Commission, Measuring Recidivism: The criminal history computation of the Federal Sentencing Guidelines at 12 (Nov. 2004)*

ROBBINS, TUNKEY, ROSS, AMSEL, RABEN & WAXMAN
LAWYER'S PLAZA, 2250 SW 3 AVE., 4TH FLOOR, MIAMI, FLORIDA 33129
TOLL FREE: 800-226-9550 | DADE: 305-858-9550 | BROWARD: 954-522-6244 | FAX: 305-858-7491
WWW.CRIMLAWFIRM.COM

## c. GENERAL DETERRENCE

We are aware of no proof that longer imprisonment leads to greater general deterrence in "White Collar" crime cases. Rather, research suggests differently: It is the risk of indictment and conviction that has a more significant effect. See David Weisburd and Elin Waring, White Collar Crimes and Careers 151 (2001). Certainly, the publicity surrounding Mr. Datta's arrest, seizure of his inventory, seizure of his accounts and assets and conviction has done more for general deterrence than any prison sentence that might be imposed.

## d. RETRIBUTION

Defendant was convicted of a serious crime but society does not need such a long sentence to validate its need for vengeance. A sentence that is "sufficient but is not greater than necessary" will allow Vikram Datta to return to his family and return to his being a productive member of society given what he has already forfeited and the year in jail he has already served.

## V. FACTOR THREE: THE KINDS OF SENTENCES AVAILABLE

The Court must consider a wide range of alternatives to imprisonment to fashion a just sentence, such as inclusion of a period of home confinement and performance of community service as conditions of the period of supervised release that certainly will follow any period of incarceration imposed. The terms that the Court might impose during the Defendant's supervised release after completion of any prison sentence ordered by the Court can be fine tuned to result in a "reasonable" sentence without imposing a lengthy prison sentence.

## VI. FACTORS FOUR-FIVE.  THE SENTENCING GUIDELINES AND POLICY STATEMENTS - ALL ADVISORY

The presentence investigation report concludes that the guidelines applications result in a total offense level of 36 using a base offense level which assumes that more than $7,000,000 was

-14-

laundered through mr. Datta's perfume business. The resulting guidelines range at that level is 188-235 months. An objection to conclusion has been made to the probation officer based on the trial evidence which was that $6,700,000 of likely drug proceeds was delivered by Hilario Martinez at the direction of Fausto Garza to Mr. Datta's perfume business. If the objection is sustained, the total offense level will be 34 with a resulting guideline range of 151-188 months.

The application notes in §2S1.1 states that the amount to be used is not the total of commingled funds but, rather, only the criminally derived funds. Because there exists no competent evidence that any of the additional funds in the LaVersailles accounts were criminally derived, it is suggested that the total offense level should be 34 based on $6,700,000 of criminally derived proceeds.

The §2B1.1 table is used to determine the guidelines applicable under §2S1.1. Application note 19 (c) following §2B1.1 provides: "There may be cases in which the offense level determined under this guideline substantially overstates the seriousness of the offense. In such cases, a downward departure may be warranted".

## VII.  FACTOR SIX.  AVOIDING DISPARITY IN TREATMENT OF SIMILAR OFFENDERS

The 2008 data and statistics from the United States Sentencing Commission reports that the median sentence in money laundering cases was 21 months. www.ussc.gov. Table 9 of those statistics indicates that the median percent of decrease from the guideline minimum was 79.2 percent in money laundering cases, applying the sentencing criteria of 18 USC 3553(a).

Vikram Datta has had no significant interaction with the criminal justice system until now. In his 51 years he has devoted his life to bettering those of others and his family. He is a man of proven deeds, not one of promised changes, promised to a sentencing judge in order to curry leniency. The humiliation and shame that this conviction has brought upon him, after endeavoring to do so much good, has crushed him, reducing him to a fragment of his former self. A lengthy prison sentence is not necessary in order to impose a "reasonable" sentence in Mr. Datta's case.

Treating offenders who are not equally culpable the same is a false equality, not at all consistent with the admonition "to avoid unwarranted sentence disparities among defendants who

-15-

have been found guilty of similar conduct." *United States v. Ennis*, 468 f. Supp 2d 228, 235-36 (D. Mass. 2006)

## VIII.  FACTOR SEVEN.  THE NEED TO PROVIDE RESTITUTION

While there is no need to provide restitution in this case, given the financial carnage this case has caused, there is a need for Mr. Datta to return to productivity to support his family and to provide jobs to the many employees who rely on Mr. Datta and his perfume business to support their families as well.

## CONCLUSION

**Any** prison sentence that this Court imposes will send a strong message.  Frankly, Mr. Datta's arrest sent a strong message. We ask the Court to impose a sentence that is "sufficient but not greater than necessary".  The 3553(a) factors strongly suggest that a "reasonable" sentence is one well below the advisory guideline range suggested by the presentence investigation report. The Court may not presume that the guideline range is reasonable but must make an individualized assessment based on the facts presented in each case. *Gall v. United States*, 128 *S.Ct 586, 596 (2007); U.S. v Arrelucea - Zamudio, 581 F3d 142, 147 (3d Cir. 2009)*. The 3553(a) factors must be given meaningful consideration in sentencing. *United States v. Jones*, 531 F3d 163 (2d Cir 2008). A lengthy prison sentence would be "greater than necessary" giving meaningful consideration of the 3553(a) sentencing factors present in Mr. Datta's case.

The Supreme Court, in *Koon v. United States*, 518 US 81, 113 (1996) spoke to the tradition in federal sentencing "for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometime mitigate, sometimes magnify, the crime and the punishment to ensue." It is most respectfully urged that the "study" of Mr. Datta's failings in the case, giving meaningful consideration of the §3553(a) factors compels mitigation and strongly suggests a sentence substantially less than that suggested by a rigid or even weighty application of the advisory guideline in this unique case.

-16-

Respectfully submitted,

**ROBBINS, TUNKEY, ROSS, AMSEL,
RABEN & WAXMAN, P.A.**
2250 S.W. 3rd Avenue
4th Floor - Lawyer's Plaza
Miami, Florida 33129-2095
Tel: (305) 858-9550
Fax: (305) 858-7491
E-Mail: criminalawyer@aol.com


By:___*/S/ ALAN S. ROSS*_____
     ALAN S. ROSS



**WHITE & WHITE**
148 East 78th Street
New York, NY 10075
Tel: (212) 861-9850
Fax: (212) 861-9870
E-Mail: diarmuid@whiwhi.com


By:___*/S/ DIARMUID WHITE*_____
     DIARMUID WHITE

ROBBINS, TUNKEY, ROSS, AMSEL, RABEN & WAXMAN
LAWYER'S PLAZA, 2250 SW 3 AVE., 4TH FLOOR, MIAMI, FLORIDA 33129
TOLL FREE: 800-226-9550 | DADE: 305-858-9550 | BROWARD: 954-522-6244 | FAX: 305-858-7491
WWW.CRIMLAWFIRM.COM